# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2021

Lyle W. Cayce
Clerk

No. 19-60847

HARRY SWALES; COREY LILLY; KYLE SHETTLES; and JOHN MCGEE, *on behalf of themselves and all others similarly situated*,

*Plaintiffs—Appellees*,

*versus*

KLLM TRANSPORT SERVICES, L.L.C.,

*Defendant—Appellant*,

_____

MARCUS BRENT JOWERS, *and others similarly situated*,

*Plaintiff—Appellee*,

*versus*

KLLM TRANSPORT SERVICES, L.L.C.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:17-CV-490

Before JOLLY, JONES, and WILLETT, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

Group litigation takes various forms, with varying formality. Traditional class actions under Federal Rule of Civil Procedure 23, for example, proceed under well-established procedural safeguards to ensure that the named plaintiffs are appropriate class representatives.[1] But so-called "collective actions" under the Fair Labor Standards Act proceed, well, differently, with district courts applying ad hoc tests of assorted rigor in assessing whether potential members are "similarly situated"—a phrase that § 216(b) of the FLSA leaves undefined.[2] The precision of Rule 23 provides useful guidance for when and how to certify a class; the imprecision of § 216(b), not so much. This interlocutory appeal concerns the threshold dispute of any wage-claim collective: How rigorously, and how promptly, should a district court probe whether potential members are "similarly situated" and thus entitled to court-approved notice of a pending collective action? Our circuit has neither adopted nor rejected a definitive legal standard. Today we do both, hopefully providing a workable, gatekeeping framework for assessing, at the outset of litigation, *before* notice is sent to potential opt-ins, whether putative plaintiffs are similarly situated—not abstractly but actually.

\* \* \*

In this minimum-wage dispute, Plaintiffs claim that KLLM Transport Services misclassified them, and all other truck drivers, as independent contractors. They allege that KLLM controls their work to such an extent that they are, in fact, employees entitled to the minimum wage. Plaintiffs want to pursue their wage claims as a collective action, which

---

[1] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.") (internal quotation marks omitted).

[2] 29 U.S.C. § 216(b).

the FLSA allows for those "similarly situated,"[3] the only two words in the FLSA that imply a standard. As is common practice, Plaintiffs moved for "conditional certification" of their proposed collective. Such certification results in "the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court."[4]

The district court granted Plaintiffs' certification request, applying the widely used *Lusardi* test, a two-step method for certifying a collective. The court, however, conceded uncertainty given *Lusardi*'s variable forms and our circuit's relative silence on the legal standard for collective-action certification.

On appeal, the parties ask us to delineate—within *Lusardi*—the district court's notice-sending discretion. We decline, as *Lusardi* has no anchor in the FLSA's text or in Supreme Court precedent interpreting it. Indeed, the word "certification," much less "conditional certification," appears nowhere in the FLSA. We therefore reject *Lusardi*'s two-step certification rubric.

Instead, we embrace interpretive first principles: (1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those "similarly situated" may proceed as a collective; and (2) the Supreme Court's admonition that while a district court may "facilitat[e] notice to potential plaintiffs" for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation.[5] These are the only binding

---

[3] *Id.*

[4] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043 (2016) (cleaned up).

[5] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500–02 (5th Cir. 2019).

commands on district courts. But they are unequivocal. And they have significant implications. In our view, a district court must rigorously scrutinize the realm of "similarly situated" workers, and must do so from the outset of the case, not after a lenient, step-one "conditional certification." Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs. These bedrock rules, not *Lusardi*, define and delimit the district court's discretion.

Because we are articulating these standards for the first time, we vacate the district court's grant of conditional certification and remand for further proceedings consistent with this opinion.

## I

Before explaining why we reject *Lusardi*, we must explain how *Lusardi* came about. We first recount the legal history of FLSA collective actions and the widespread confusion regarding whether, when, and to whom to send court-approved notice of a putative FLSA collective. We then explain how the district court navigated its way through these muddy waters.

## A

The FLSA protects employees (not independent contractors) by establishing a minimum hourly wage, maximum work hours, and overtime compensation for work beyond 40 hours per week.[6] Section 216(b) of the FLSA is a catch-all provision titled "Damages; right of action; attorney's fees and costs; termination of right of action." The middle of the provision states that employees may proceed collectively when they are "similarly

---

[6] 29 U.S.C. §§ 206(a)(1), 207(a).

No. 19-60847

situated."[7] That's it. The statute doesn't define "similarly situated." And critical to this case, it says nothing about "certification" or "notice."

Congress amended the FLSA's collective-action procedure through the 1947 Portal-to-Portal Act, requiring similarly situated employees to opt-in via written consent.[8] Section 216(b)'s opt-in mechanism differs from Rule 23 class actions, where members are bound by the judgment or settlement unless they affirmatively opt out.[9] As the Supreme Court explained, this opt-in requirement was a response "to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome" of FLSA cases.[10] Thus, "the representative action by plaintiffs not themselves possessing claims was abolished, and the requirement that an employee file a written consent was added."[11]

The Portal-to-Portal Act takes into account the dual goals of collective actions: (1) enforcement (by preventing violations and letting employees pool resources when seeking relief); and (2) efficiency (by resolving common issues in a single action).[12] But collective actions also pose dangers: (1) the opportunity for abuse (by intensifying settlement pressure no matter how meritorious the action); and (2) the appearance of court-endorsed solicitation of claims (by letting benign notice-giving for case-management

---

[7] 29 U.S.C. § 216(b).

[8] *Hoffmann-La Roche*, 493 U.S. at 173.

[9] *Id.* at 177 (Scalia, J., dissenting).

[10] *Id.* at 173.

[11] *Id.*

[12] *Bigger v. Facebook*, 947 F.3d 1043, 1049 (7th Cir. 2020).

No. 19-60847

purposes warp into endorsing the action's merits, or seeming to, thus stirring up unwarranted litigation).[13]

The trial court's notice-giving role is pivotal to advancing the goals and evading the dangers of collective actions. An employee cannot benefit from a collective action without "accurate and timely notice," as the Supreme Court put it in *Hoffman-La Roche, Inc. v. Sperling*.[14] The Court never mentioned any "certification" process, but stated that district courts may oversee the notice and opt-in process. And since written consent is required by statute, a court's notice-sending authority is "inevitable" in cases involving numerous potential plaintiffs.[15] "Permitting the court to facilitate notice helps ensure" efficient resolution of common issues.[16] Further, a trial court can better manage a collective action "if it ascertains the contours of the action at the outset," and "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed."[17]

To be sure, *Hoffman-La Roche* "nowhere suggests that employees have a right to receive notice of potential FLSA claims."[18] It's discretionary with the district court. The Court cautioned, however, that trial courts do not possess "unbridled discretion" in overseeing collective actions and

---

[13] *Id.*

[14] 493 U.S. at 170.

[15] *Id.* at 171. *Hoffman-La Roche* involved the Age Discrimination in Employment Act, which contains a provision identical to § 216(b) of the FLSA. Courts, including this one, have consistently applied *Hoffman-La Roche* to FLSA cases. *See, e.g.*, *In re JPMorgan*, 916 F.3d at 500.

[16] *In re JPMorgan*, 916 F.3d at 500 (citing *Hoffmann-La Roche*, 493 U.S. at 170).

[17] *Hoffman La-Roche*, 493 U.S. at 172.

[18] *In re JPMorgan*, 916 F.3d at 501.

No. 19-60847

sending notice to potential opt-in plaintiffs.[19] Given the real risk of abuse of the collective-action device, a court's "intervention in the notice process" cannot devolve into "the solicitation of claims."[20] In overseeing the process, the district court "must be scrupulous to respect judicial neutrality. To that end, district courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."[21] No judicial thumbs (or anvils) on the scale. In sum, the Court held that a district court must oversee the notice process agnostically. But it didn't prescribe how district courts should do that: "We confirm the existence of the trial court's discretion, not the details of its exercise."[22]

The Court has provided no further guidance regarding the notice-giving process. Nor is there much federal appellate precedent across the country.[23] Indeed, FLSA collective actions rarely (if ever) reach the courts of appeals at the notice stage because "conditional certification" is not a final judgment.[24] Plus, the leniency of the stage-one standard, while not so toothless as to render conditional certification automatic, exerts formidable settlement pressure.

## B

Without "statutory or case law guidance, the district courts, both within this circuit and without, have arrived at a loose consensus as to the

---

[19] *Hoffman La-Roche*, 493 U.S. at 174.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 170

[23] *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1111 (9th Cir. 2018).

[24] In this case, the district court certified its certification decision for interlocutory appeal, and we agreed to decide it. 28 U.S.C. § 1292(b).

proper procedure" for certifying collective actions.[25] With some variations, district courts generally look to one of two general approaches.

The first approach, "the near-universal practice"[26] of the district courts, comes from the 1987 New Jersey district court opinion in *Lusardi v. Xerox Corporation*.[27] *Lusardi* laid out a two-step process to determine, "on an *ad hoc* case-by-case basis," whether prospective opt-in plaintiffs in a proposed collective are "similarly situated" enough to satisfy the FLSA.[28]

Step one involves "an initial 'notice stage' determination" that proposed members of a collective are similar enough to receive notice of the pending action.[29] This initial step is referred to as "conditional certification" of a putative class.[30] District courts typically base their decisions at the first step "on the pleadings and affidavits of the parties."[31] And they may require little more than "substantial allegations that the putative [collective] members were together the victims of a single decision, policy, or plan."[32] Step two occurs at "the conclusion of discovery (often prompted by a motion to decertify)."[33] Because it has the benefit of full discovery, the court makes a second and final "determination, utilizing a stricter standard," about whether the named plaintiffs and opt-ins are "similarly situated" and may

---

[25] *Campbell*, 903 F.3d at 1108–09.

[26] *Id.* at 1100.

[27] 118 F.R.D. 351 (D.N.J. 1987).

[28] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

[29] *Id.*

[30] *In re JPMorgan*, 916 F.3d at 500–01.

[31] *Id.* at 501.

[32] *Thiessen*, 267 F.3d at 1102.

[33] *Id.* at 1102–03.

therefore proceed to trial as a collective.[34] If the court finds that the opt-ins are not sufficiently similar to the named plaintiffs, it "must dismiss the opt-in employees, leaving only the named plaintiff's original claims."[35] Factors considered at this second step include: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[36]

The second approach, which only a few courts apply, comes from the 1990 Colorado district court opinion in *Shushan v. University of Colorado*.[37] In *Shushan*, the court held that for conditional certification, plaintiffs "must satisfy all of the requirements of [R]ule 23, insofar as those requirements are consistent with [] § 216(b)."[38] The court acknowledged the difference between § 216(b)'s opt-in feature and Rule 23's opt-out feature, but it concluded "that Congress intended [§ 216's] 'similarly situated' inquiry to be coextensive with Rule 23 class certification."[39] That means courts applying this test consider "numerosity," "commonality," "typicality,"

---

[34] *Id.*

[35] *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008).

[36] *Thiessen*, 267 F.3d at 1103.

[37] 132 F.R.D. 263 (D. Colo. 1990). A third "certification" test comes from *Bayles v. American Medical Response of Colorado, Inc.*, 950 F. Supp. 1053, 1063 (D. Colo. 1996). In *Bayles*, however, the court was deciding whether to "decertify" the collective after discovery was complete. The question here—whether and when to send out notice—is different.

[38] *Id.* at 265 (emphasis omitted).

[39] *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995) (describing *Shushan*).

and "adequacy of representation" to determine whether to certify a collective action.[40]

Our sister circuits have pointed out perceived flaws in both approaches.[41] As for *Lusardi*, it is an abstract and ad-hoc "balancing test with no fulcrum."[42] As for *Shushan,* it "rests improperly on an analogy to Rule 23 lacking in support in [] the FLSA."[43] While no circuit court has formally adopted *Shusan*, some have endorsed *Lusardi*.[44]

We now turn to the history of this case and the approach the district court took.

C

KLLM transports refrigerated goods throughout the country, using either company-owned trucks operated by its employee–drivers or trucks provided by other drivers classified as independent contractors. Independent contractors can also lease their trucks directly from KLLM.

Between 2015–2017, Plaintiffs Harry Swales, Corey Lilly, Kyle Shettles, John McGee, and Marcus Jowers drove trucks under an Independent Contractor Agreement for KLLM. Without any notice going out, six additional drivers have already opted into the lawsuit.

Plaintiffs argue that KLLM misclassified them—and other "similarly situated" drivers—as independent contractors rather than as employees. So they sued for violation of the FLSA's minimum-wage requirement. The

---

[40] *Id.*

[41] *See Campbell*, 903 at 1111–1116 (collecting cases).

[42] *Id.* at 1114.

[43] *Id.* at 1111.

[44] *Id.* at 1111, 1114.

district court authorized discovery "limited to the issue of § 216(b) certification" to determine whether to conditionally certify a collective and facilitate notice to potential members. After the discovery deadline expired, Plaintiffs moved for conditional certification, which KLLM opposed.

The district court observed, correctly, that "[f]ew areas of the law are less settled than the test for determining whether a collective action should be certified under § 216(b)." The court then applied its own version of *Lusardi.*

Because the parties had already engaged in substantial, although not complete, discovery on whether Plaintiffs and potential opt-ins were similarly situated, KLLM urged the district court to apply the stricter standard usually reserved for the second step of *Lusardi*, once discovery is complete. At that step, the district court makes "a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action," either greenlighting the action or instead "decertifying" it and allowing only the named plaintiffs to proceed. [45]

Recognizing the significant discovery that had already taken place, the district court applied a Goldilocks version of *Lusardi*, something in between lenient and strict. It decided that Plaintiffs and Opt-ins needed to show "more than minimal evidence" of their similarities to justify conditional certification. The court noted that Plaintiffs and Opt-ins all drove trucks for KLLM under an independent-contractor agreement, received compensation based on the number of miles they drove, and leased their trucks from KLLM. The court also acknowledged the differences, including different per-mile compensation rates and hours worked. The court concluded that despite these differences, "the claims and defenses largely

---

[45] *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 375 n.2 (5th Cir. 2016).

turn on the same questions, like whether the drivers were misclassified as independent contractors," a decision determined by the "economic-realities test."

KLLM pointed to evidence showing that the application of the economic-realities test to Plaintiffs and Opt-ins would require a highly individualized inquiry. This evidence, according to KLLM, counseled against certification (conditional or otherwise) of the collective. The district court believed it could not consider anything related to the economic-realities test at the pre-notice stage because the test was a "merits issue" to be dealt with after discovery was complete. But the court acknowledged that "KLLM may ultimately have a point" that, because each plaintiff would have to present different facts under the economic-realities test, they might not be "similarly situated."

The district court granted Plaintiffs' motion, conditionally certifying a collective of potentially thousands of KLLM truck drivers. The putative collective was limited to those who worked for KLLM "within three years of the date" the order was entered and excluded those who signed an arbitration agreement.

At the end of its opinion, the district court sua sponte certified its certification decision for interlocutory appeal under 28 U.S.C. § 1292(b) and stayed the case. Explaining why, the court stated that the certification and notice processes were "controlling questions of law as to which there is substantial ground for difference of opinion . . . . [T]here are open questions regarding the applicable standards [of conditional certification], especially when some discovery has occurred." KLLM then filed a petition for appeal by permission, which we granted.

No. 19-60847

## II

We review de novo the question of law at issue—the legal standard that district courts should use when deciding whether to send notice in an FLSA collective action.[46] And once the correct legal standard is ascertained, we review the district court's decision for abuse of discretion.[47]

## III

The parties assume that *Lusardi* (or some version of it) applies but dispute whether the district court abused its discretion in refusing to consider "decertification" evidence at step one. Plaintiffs even argue that we have "affirmed use of the *Lusardi* two-step method for FLSA collective actions." This is mistaken. We have "carefully avoided adopting" *Lusardi*, and our avoidance should not be misconstrued as acquiescence.[48] And now that the question is squarely presented, we reject *Lusardi*.

While at least one of our sister circuits, the Eleventh Circuit, has endorsed *Lusardi*, it did so only after a jury verdict.[49] And the question before the Eleventh Circuit was whether the district court abused its discretion in denying the employer's motion to decertify the collective action.[50] The court therefore did not address *Lusardi* in the notice-giving context. Even so, the court only stated that *Lusardi*'s two-step method "appears to be an effective tool," but district courts aren't required to use it.[51] The Ninth Circuit has, in

---

[46] *Mooney*, 54 F.3d at 1213.

[47] *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016).

[48] *See In re JPMorgan*, 916 F.3d at 500 n.9.

[49] *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008).

[50] *Id.*

[51] *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (considering the ADEA's identical § 216(b) provision).

reviewing a district court's dismissal of a collective action, rejected *Lusardi* because it "improperly sanctions the decertification of collective actions the district court finds procedurally challenging."[52]

While we agree with the Ninth Circuit that *Lusardi* should be rejected, we disagree as to the reasons why. The real issues *Lusardi* creates occur not at decertification, but from the beginning of the case.

As this case demonstrates, *Lusardi* frustrates, rather than facilitates, the notice process. The first problem is that the *Lusardi* test comes in many varieties. The district court conceded confusion precisely because courts "have taken different approaches" to *Lusardi* when some discovery has occurred. The use of *"Lusardi"* or even collective-action "certification" has no universally understood meaning. Thus, the amorphous and ad-hoc test provides little help in guiding district courts in their notice-sending authority.

Second, *Lusardi* distracts from the FLSA's text. The FLSA, and § 216(b) in particular, says nothing about "conditional certification" or any of the requirements of Rule 23. We thus cannot read the statute as supporting any of the certification tests that district courts have created to determine whether a group of employees should receive notice about a collective action. And there is no Supreme Court case stating otherwise.

In fact, the Court has only addressed "conditional certification" twice, and both times it did so indirectly. In *Genesis Healthcare Corporation v. Symczyk*, the Court addressed a mootness issue in an FLSA case.[53] The respondent invoked cases about class certification under Rule 23, and the Court said that "conditional certification" differed from class certification

---

[52] *Campbell*, 903 F.3d at 1117.

[53] 569 U.S. 66 (2013).

because the former "does not produce a class with an independent legal status or join additional parties to the action."[54] Unlike Rule 23 class certification, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court."[55] The Court concluded that "[w]hatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23."[56] And in *Tyson Foods, Incorporated v. Bouaphakeo*, the Court only referred to conditional certification when it quoted *Symczyk*'s language that "conditional certification" just means sending notice.[57]

Two-stage certification of § 216(b) collective actions may be common practice. But practice is not necessarily precedent. And nothing in the FLSA, nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any "certification" process. The law instead says that the district court's job is ensuring that notice goes out to those who are "similarly situated," in a way that scrupulously avoids endorsing the merits of the case. A district court abuses its discretion, then, when the semantics of "certification" trump the substance of "similarly situated." District courts have impermissibly zeroed in on "certification" standards this way in the past, as explained in our recent decision in *In re JPMorgan Chase & Company*.

---

[54] *Id.* at 75.

[55] *Id.* (internal citations omitted).

[56] *Id.* at 78.

[57] 136 S. Ct. 1036, 1043 (2016).

No. 19-60847

In *JP Morgan*, we held that it was beyond the district court's discretion to order notice to employees who had signed arbitration agreements and were thus not potential participants of the FLSA collective action.[58] We noted that some district courts waited until the second step of *Lusardi*, after discovery was complete, to determine the applicability of arbitration agreements.[59] "Because *Hoffmann-La Roche* strictly forbids district courts from appearing to endorse the merits of the litigation by means of facilitating notice, those district courts conclude that the existence of arbitration agreements—as a merits-based issue—must not be addressed until the decertification stage."[60] We held that it was improper to refuse to consider evidence about arbitration agreements before sending notice because notice can only go to "potential participants."[61] "And alerting those who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what *Hoffmann-La Roche* flatly proscribes."[62] We thus concluded that when there is a genuine dispute about an arbitration agreement, the district court "should permit submission of additional evidence, carefully limited to the disputed facts" before notice is sent.[63]

The district court here, like the one in *JPMorgan*, felt that it could not reach "merits" issues until *Lusardi*'s step two—after notice is sent out and discovery is complete. The court had authorized preliminary discovery on "certification" issues. There were eleven depositions, over 19,000

---

[58] 916 F.3d at 504.

[59] *Id.* at 501.

[60] *Id.*

[61] *Id.* at 502.

[62] *Id.*

[63] *Id.* at 503.

documents produced, and even expert evidence. But the court (in the footsteps of many others) felt bound by the "conditional certification" step of *Lusardi* to disregard some of this evidence, particularly the evidence that went to the differences between Plaintiffs and Opt-ins. The court found that it could not consider any of this evidence of dissimilarity "at the pre-notice stage" because it went to the merits of the case.

But the merits issue here—whether Plaintiffs were misclassified as independent contractors—resembles the issue of arbitration agreements in *JPMorgan*. Both are potentially dispositive, threshold matters. Just as the existence of a valid arbitration agreement bars an employee from bringing a lawsuit in general, a valid independent-contractor classification bars application of the FLSA. The fact that a threshold question is intertwined with a merits question does not itself justify deferring those questions until after notice is sent out. Just as we held it was improper to ignore evidence of the arbitration agreements in *JPMorgan*, it's improper to ignore evidence of other threshold matters, like whether the plaintiffs are "employees" such that they can bring an FLSA claim.

We thus reject *Lusardi* because on the one hand, its flexibility has led to unpredictability. And on the other hand, its rigidity distracts district courts from the ultimate issues before it. Next, we'll discuss what this means, on a practical level, for this case.

IV

Instead of adherence to *Lusardi*, or any test for "conditional certification," a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination

must be made, and as early as possible. In other words, the district court, not the standards from *Lusardi*, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs.

For example, in a donning and doffing case, notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations. In those types of cases, the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job. So, a district court will not likely need mountains of discovery to decide whether notice is appropriate. In another case, such as this one, where Plaintiffs have demonstrably different work experiences, the district court will necessarily need more discovery to determine whether notice is going out to those "similarly situated."

Considering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits. Rather, addressing these issues from the outset aids the district court in deciding whether notice is necessary. And it ensures that any notice sent is proper in scope—that is, sent only to potential plaintiffs. When a district court ignores that it can decide merits issues when considering the scope of a collective, it ignores the "similarly situated" analysis and is likely to send notice to employees who are not potential plaintiffs. In that circumstance, the district court risks crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool. *Hoffman-La Roche* flatly forbids such line crossing.

In this case, applying *Lusardi* was inappropriate because the threshold issue here depends on the economic-realities test, which asks how much

control the employer had over the independent contractor.[64] Thus, the district court needed to consider the evidence relating to this threshold question in order to determine whether the economic-realities test could be applied on a collective basis. If answering this question requires a highly individualized inquiry into each potential opt-in's circumstances, the collective action would quickly devolve into a cacophony of individual actions. As KLLM points out, the individualized nature of the economics-realities test is why misclassification cases rarely make it to trial on a collective basis.

To determine, then, whether and to whom notice should be issued in this case, the district court needs to consider all of the available evidence. For example, KLLM pointed to numerous variations among the Plaintiffs and Opt-ins who joined before any notice, including the length of their contracts with KLLM, which ranged from one month to four years. KLLM also noted that the Plaintiffs and Opt-ins provided inconsistent discovery responses about the control they had over their profitability—some drivers decided to work only for specific customers or in certain regions, at least one Plaintiff hired an employee to drive for him, and the drivers disagreed as to whether they had to stop for fuel at KLLM's recommended fuel stops or have their trucks serviced by KLLM rather than third parties.

Regarding the potential opt-ins to whom the district court authorized notice, the differences were even starker. Over 400 drivers with independent-contractor agreements hired their own employees to help operate the equipment. KLLM offered 41 different compensation arrangements that the drivers could choose from. And drivers had different

---

[64] *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998).

options for leasing their trucks—they could do so from KLLM or lease or buy a truck from a third party. The district court need not, and should not, disregard this evidence. These facts affect whether all of KLLM's independent contractors can be grouped together for purposes of (later) determining the level of control KLLM exercised over their work. The same facts will also be relevant when (later) deciding the ultimate merits issue. And that's okay. In other words, the same evidence will often serve two purposes, and the district court need not ignore that evidence to avoid using it for the wrong purpose.

After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be "similarly situated" for purposes of answering whether they are in fact employees, or at least that Plaintiffs have not met their burden of establishing similarity.[65] If that is the case, it may decide the case cannot proceed on a collective basis. The district court may instead decide that it needs further discovery to make this determination. Or it may find that only certain subcategories of drivers, depending on their economic dependence on KLLM, should receive notice.

The bottom line is that the district court has broad, litigation-management discretion here. To be sure, that discretion is cabined by the FLSA's "similarly situated" requirement and the Supreme Court's decision in *Hoffman La-Roche*. But it is not captive to *Lusardi* or any "certification" test. It's unnecessary for district courts, owing to inertia or

---

[65] While the text of §216(b) is not explicit on this point, we hold that such a burden follows from the general burden that a plaintiff bears to prove her case. This makes sense as a practical matter as well, as a plaintiff should not be able to simply dump information on the district court and expect the court to sift through it and make a determination as to similarity.

path-dependence, to continue to invoke and then stretch *Lusardi* beyond recognition (or reason) to fit the case before it.

## V

This case poses an issue that has been under-studied but whose importance cannot be overstated: how stringently, and how soon, district courts should enforce § 216(b)'s "similarly situated" mandate. As explained above, the FLSA's similarity requirement is something that district courts should rigorously enforce at the outset of the litigation. Since we are announcing this framework, and our rejection of *Lusardi*, for the first time, we VACATE the district court's order granting Plaintiffs' motion for conditional certification and REMAND for further proceedings consistent with this opinion.